# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 04-762 consolidated with 04-1122

WENDY P. LEA

VERSUS

DAVID B. SANDERS

**************

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2002-0832
HONORABLE HERMAN I. STEWART, PRESIDING

**************

**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Michael G. Sullivan, Judges.

**REVERSED and REMANDED.**

David C. Hesser
Gold, Weems, Bruser, Sues & Rundell
2001 MacArthur Drive/ P.O. Box 6118
Alexandria, Louisiana 71307
(318) 445-6471
COUNSEL FOR PLAINTIFF/APPELLANT:
    Wendy P. Lea

E. Grey Burnes Talley
Burnes, Burnes & Talley
711 Washington Street/ P.O. Box 650
Alexandria, Louisiana 71309-0650
COUNSEL FOR DEFENDANT/APPELLEE:
    David B. Sanders

**COOKS, Judge.**

## STATEMENT OF THE CASE

This is a case of first impression in this circuit involving the application of La.R.S. 9:315.9, the shared custody child support provision.

Wendy Lea and David Sanders were married, and one child was born of the marriage. The couple divorced but subsequently resumed their relationship during which three additional children were born. The couple eventually parted company. On September 20, 2002, Wendy Lea filed a Rule for Custody, Visitation, and Child Support. An interim child support rule was signed October 17, 2002, ordering David Sanders to pay $700.00 a month support for his four children.[1] On November 18, 2002, a Consent Shared Custody Implementation Order was signed. David was given physical custody of the children "every day off from work" and he was ordered to provide Wendy "with a copy of his schedule as soon as he receives it and let her know of any changes to allow her time to plan for child care and transportation." Additionally, he was given physical custody for two weeks in June and July and every other holiday. Child support was not addressed in the order of November 18, 2002.

On November 21, 2003, Wendy filed a Rule to Modify Visitation and Motion to Reset Rule to Show Cause for Child Support. The petition alleged David's "working schedule is too erratic, and complying with the rule of this Court creates an instability in the lives of the minor children." Additionally, Wendy alleges David has not been consistent in the payment of support despite the interim support order of October 17, 2002 and "[p]etitioner shows that she has not sufficient means to support the minor children at this time and that [she] is in immediate need of child support in an amount to be set by this Honorable Court, and retroactive to September 20, 2002,

---

[1] This order is referenced in a pleading; however, it does not appear in the record on appeal.

at its earliest opportunity."

David responded by asserting he was entitled to rely on La.R.S. 9:315.9, the shared custody provision, for a reduction of his child support obligation. The issue of child support was heard before the Family Court Hearing Officer. The Hearing Officer found "the parties have 'shared custody' and each parent has physical custody of their four children for an approximately equal amount of time." The Hearing Officer concluded because David shared physical custody of his children his support obligation, by operation of La.R.S. 9:315.9, should be drastically reduced. Wendy contends David should not be allowed an automatic reduction in his support obligation by reliance on La.R.S. 9:315.9 because the evidence does not establish that he has satisfied the threshold percentage of shared custody mandated therein. Instead, she insists David must meet the burden of proof required under the prior provision, La.R.S. 9:315.8.

A hearing on the matter was held on May 6, 2004. The only evidence presented by David at the hearing was a calendar showing the days he spent with his children each month. The trial court found David had physical custody of his children 157 days a year or approximately 43% of the time. The court found, based on this percentage, David "shared custody" with Wendy and was entitled to rely on La.R.S. 9:315.9. For the reasons assigned below, we reverse the decision of the trial court and remand for further proceedings.

## LAW AND DISCUSSION

Louisiana Revised Statute 9:315.9(A) is a new statute and provides, in relevant part:

> (1) "Shared custody" means a joint custody order in which each parent has physical custody of the child for an *approximately equal amount of time.*

3

(2) If the joint custody order provides for shared custody, the basic child support obligation shall first be multiplied by one and one-half and then divided between the parents in proportion to their respective adjusted gross incomes.

(3) Each parent's theoretical child support obligation shall then be cross multiplied by the actual percentage of time the child spends with the other party to determine the basis child support obligation based on the amount of time spent with the other party.
(Emphasis added.)

Comments under the statute provide, in relevant part:

(a) This Section is entirely new and contains a formula for calculating the basic child support obligation and an adjustment when the parents have *shared* custody, which is defined *as equal or approximately equal* physical custody under a joint custody decree. *The reference in Subsection (A)(3) should be interpreted as one half or an approximately equal amount of time, expressed in percentages such as forty-nine percent/fifty-one percent. See Subsection (A)(1).*
. . . .
This calculation reflects the fact that each parent has physical custody of the child for approximately one-half of the year.
(Emphasis added.)

Shared custody under this provision is defined as "physical custody of the child for an approximately equal amount of time." La.R.S. 9: 315.9(1). Comment A under this provision defines "approximately equal" as "one half or an approximately equal amount of time, expressed in percentages such as forty-nine percent/fifty-one percent." Wendy contends David does not meet the threshold percentage of this provision and, if he seeks a credit against his basis child support obligation, he must meet the burden of proof required under La. R.S. 9:315.8 which provides, in relevant part:

E. "Joint Custody" means a joint custody order that is not shared custody as defined in R.S. 9:315.9.

(1) In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time.

(2) If under a joint custody order, the person ordered to pay child

4

support has physical custody of the child for more than seventy-three days, the court may order a credit to the child support obligation. A day for the purposes of this Paragraph shall be determined by the court; however, in no instance shall less than four hours of physical custody of the child constitute a day.

(3) In determining the amount of credit to be given, the court shall consider the following:

(a) The amount of time the child spends with the person to whom the credit would be applied.
(b) The increase in financial burden placed on the person to whom the credit would be applied and the decrease in financial burden on the person receiving child support.
(c) The best interests of the child and what is equitable between the parties.

Under this provision when one parent exercises *at least seventy-three days* of visitation, the court *may* order a credit against the basic child support obligation of that parent. However, the credit is not applied automatically even if the parent proves the amount of time spent with the child exceeds seventy-three days. Instead, the parent seeking the credit bears the additional burden of proving: (1) the physical custody of the children results in an increase in his/her financial burden and a decrease in the financial obligation of the other parent, and (2) the best interests of the child and what is equitable between the parties would be served by allowing the credit.

In contrast, under the newly enacted provision, La.R.S. 9:315.9, once a determination is made that a parent exercises equal (50%/50%) or approximately equal (49%/51%) physical custody of the children, the statute creates a rebuttable presumption that the financial burden is being shared equally without the necessity of the additional proof required under La.R.S. 9:315.8. The new statute provides the mathematical calculation for determining the support obligation for each parent using the worksheet provided for in La.R.S. 9:315.20.

David argues since the time spent with his children is significantly more than

5

the seventy-three day minimum of La.R.S. 9:315.8 (although less than 49%), he should be entitled to rely on the presumption of La.R.S. 9:315.9 to reduce his child support obligation without submitting additional proof. We disagree. Louisiana's uniform child support guidelines were enacted to provide "adequacy and consistency in child support awards." *Guillot v. Munn*, 99-2132, p. 8 (La. 3/24/00) 756 So.2d 290, 297. Any judicial deviation from the basic support obligation "should be allowed only in limited circumstances" and only with clear legislative intent. *Id.* In this case, the legislature has indicated shared custody is physical custody for at least 49% of the time. A parent with physical custody below this threshold percentage is not entitled to rely on the presumption contained in the statute. We reach this conclusion from examining the context in which the legislature enacted the new shared custody provision.

In 1989, Louisiana enacted uniform guidelines for determining support awards in response to federal mandate.[2] Prior to the enactment of uniform guidelines, "support awards were determined on a case-by-case basis and subject to wide judicial discretion." *Guillot,* 756 So.2d at 294. Louisiana, along with the majority of states, adopted the *income shares model* in which the parents' income is combined to represent the total income of the intact family. The policy underlying the adoption of this model was articulated by the legislature in La.R.S. 9:315(A), which provides, in relevant part:

> The premise of these guidelines as well as the provisions of the Civil Code is that child support is a continuous obligation of both parents, children are entitled to share in the current income of both parents, and children should not be the economic victims of divorce or out-of-wedlock birth. The economic data underlying these guidelines, which adopt the Income Shares Model, and the guideline calculations attempt to simulate the percentage of parental net income that is spent

---

[2] "Congress enacted the Family Support Act of 1988, which mandated that states establish presumptive, rather than advisory, guidelines by October 13, 1989. Pub.L. No. 100-485, 102 Stat. 2343 (1988)." *Guillot* at 295.

on children in intact families incorporating a consideration of the expenses of the parties, such as federal and state taxes and FICA taxes. While the legislature acknowledges that the expenditures of two-household divorced, separated, or non-formed families are different from intact family households, it is very important that the children of this state not be forced to live in poverty because of family disruption and that they be afforded the same opportunities available to children in intact families, consisting of parents with similar financial means to those of their parents.

The legislature mandated the party seeking a deviation from the basic child support guidelines bears the burden of proof. Louisiana Revised Statute 9:315.1(A) provides "[t]here shall be a rebuttable presumption that the amount of child support obtained by the use of the guidelines set forth in this Part is the proper amount of child support." The trial court may deviate from the guidelines only "if their application would not be in the best interest of the child or would be inequitable to the parties." La.R.S. 9:315.1(B). "Deviations should be allowed only in limited circumstances so that the function of the guidelines, which is to provide adequacy and consistency in child support awards, is preserved." *Guillot* 756 So.2d at 297.

In *Guillot*, Mr. Munn, the father, argued he should be allowed a deviation from his basic support obligation because he had physical custody of his children 37% of the time under a joint custody order. Prior to the amendment, La.R.S. 9:315.8[3] allowed the court to make an adjustment in the basic obligation of the nondomiciliary parent based on the amount of time spent with the children. No guidelines for determining the amount of the deviation was provided for in the statute. The trial court in *Guillot,* allowed Mr. Munn a 30% reduction based on his percentage of physical custody of the children without any additional proof. The supreme court reversed and remanded.

---

[3] La.R.S. 9:315.8(E) provided: "In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary parent as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary parent."

At the outset, the supreme court held a "typical" amount of physical custody is contemplated by the guidelines in cases of joint legal custody. Proof of consistent and ordinary physical custody by the nondomiciliary parent was not enough to support a deviation from the guidelines. The court reasoned if a deviation were allowed in every joint custody case, "the presumptive force of the guidelines would be rendered meaningless." *Id.* at 299. However, the court recognized "a reduction in the amount of support owed to the domiciliary parent may be warranted when the nondomiciliary parent has the child for a non-typical, i.e., an extraordinary, amount of time per year. When the time a child spends with the nondomiciliary parent reaches this heightened level, the parents are generally said to be in a 'shared custody' or 'extraordinary visitation' arrangement." *Id*.

The *Guillot* court found the trial court erred in allowing a 30% deviation from the support obligation, based solely on the basis of time spent, absent any other proof in the record. On remand, the court articulated guidelines for the trial court in determining whether a deviation from the basic support obligation is warranted. These guidelines were later codified in La.R.S. 9:315.8. The court stated:

> First, the court must determine whether the visitation is in fact extraordinary. Visitation that is barely more than "typical" will usually not be considered extraordinary visitation warranting deviation. Second, the court must consider whether the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the custodial parent. Because we find this test accurately reflects the considerations involved in determining whether to deviate from the guidelines in shared custody or extraordinary visitation situations and because it furthers public policy and the legislature's intent in enacting La.R.S. 9:315.8(E), we hereby adopt this test for use in considering whether a shared custody or extraordinary visitation situation warrants deviation.
>     We must, however, add a third prong to this test. That is, the court must determine that the application of the guidelines in the particular case under consideration would not be in the best interest of the child or would be inequitable to the parties.

*Guillot,* 756 at 300 (citation omitted).

8

*Guillot* did not decide the threshold percentages for "typical visitation", "extraordinary visitation" or "shared custody",[4] or whether Mr. Munn's 37% physical custody rose to the level of "extraordinary visitation" or "shared custody." The case was remanded to the trial court to determine whether Mr. Munn's visitation was in fact "extraordinary" and, if so, what amount of credit he may be entitled to using the guidelines mandated by the *Guillot* court. However, *Guillot* made it clear any deviation from the basic support obligation is allowed only in limited circumstances and only with the requisite proof.

Subsequent to the *Guillot* decision, the legislature amended La.R.S. 9:315.8 to codify the requirements of *Guillot* in cases where physical custody reaches "extraordinary" levels and one parent seeks a credit. The statute establishes the threshold amount of time required to seek a credit at seventy-three days (or 20%). Additionally, the legislature enacted a separate provision in cases of shared custody. The newly enacted provision, La.R.S. 9:315.9, establishes the threshold percentage for "shared custody" at 49% and provides a mathematical calculation for determining the support obligation without additional proof.

In this case, the trial court found David exercised visitation 43% of the time. He argues this amount is close enough to 49% to allow him to rely on this numerical percentage to justify his request for a reduction in his support obligation absent any other proof. Because his numerical percentage does not reach the threshold

---

[4] In a footnote, *Guillot* discussed use of these terms in other jurisdictions. The court stated: "In some jurisdictions, shared custody and extraordinary visitation are treated differently for purposes of determining the amount of child support owed. For example, in Hawaii, Kansas, and New Mexico, shared custody is defined as the situation in which a child spends "substantially equal" amounts of time with each parent. If the shared custody test is met, then guidelines provide for a specific calculation of the support obligation that is different than that of sole custody. If, however, visitation occurs in excess of 30% but less than 50% the situation is in the nature of extraordinary visitation and an adjustment in child support is given. Morgan III, *supra*. In Louisiana, however, the terms shared custody and extraordinary visitation do not appear in our statutes. Instead, a deviation is allowed for non-typical amounts of time the child spends with the nondomiciliary party." *Guillot*, 756 So.2d at 299, fn. 7.

9

percentage designated by the legislature under the new statute and deviations from the guidelines are to be allowed only in limited circumstances, we conclude if a party exercises physical custody less than 49%, that party cannot rely on the presumption and the mathematical calculations established in La.R.S. 9:315.9 and must bear the burden of proof in accordance with La.R.S.9:315.8. Therefore, we conclude La.R.S. 9:315.9 is inapplicable to this case. This result is in keeping with the legislative intent of the statute and principles articulated in *Guillot* regarding deviations from the support obligation only in limited circumstances. In fact, the *Guillot* court recognized even when one parent exercises extraordinary visitation and obtains a credit, the result may be greater expense for the domiciliary party. The trial court must balance the interest of the parent seeking the credit with the interest of the domiciliary parent whose child care expenses are not significantly reduced. The court stated:

> [T]he Legislature intended that courts balance the interest of both parties, *i.e.*, the economic impact of shared custody on both parents, in considering whether to deviate from the guidelines in shared custody or extraordinary visitation situations. In considering these unique situations, judges must recognize that shared custody or extraordinary visitation arrangements are more expensive, perhaps significantly so, than traditional visitation arrangements. They must ensure that any deviation from the guidelines will not result in the domiciliary parent's inability to adequately provide for the child.
> We note the Legislature has given the trial court wide discretion in cases dealing with shared custody to allow it to deal with the myriad of circumstances that may occur in these cases.

*Id.* at 300 (footnote omitted).

Moreover, we have reviewed the record including the calendar of days David spent with his children. Although his visitation reaches 157 days, or 43%, we note the pattern of his visitation appears quite typical of a joint legal custody arrangement. Except for summer vacation, most of his visitation days fall over a weekend or appear sporadically throughout the month. In fact, Wendy's petition alleges his "working schedule is too erratic" and "creates an instability in the lives of the minor children."

10

David does not have custody of the children for an entire week or weeks during the month. This type of custody arrangement does not significantly reduce the domiciliary parent's expenses. Other than the numerical percentage, David has presented no other evidence to indicate that he is bearing a greater financial responsibility under this arrangement or that he is decreasing the financial burden of the domiciliary parent. We find his visitation does not fall within the shared custody provision of La.R.S. 9:315.9, where each parent expends time and resources *equally* in caring for the children.

## DECREE

Based on the foregoing review of the record, the decision of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion. All costs of this appeal are assessed to David B. Sanders.

**REVERSED and REMANDED.**