DREW, J.
 

 11 Karen Laws appeals a “Ruling on Motion for Change of Minor’s Surname” which authorized Robert Hale, the father of her minor son, “to take additional necessary legal steps to change” the son’s surname from Laws to Hale. The contested ruling was signed on September 8, 2008, and filed in the trial court record the following day. We affirm.
 

 FACTS
 

 The minor son, “HFL,” was born outside of marriage to Karen Laws and Robert Hale on January 5, 1997. Hale was listed on the birth certificate as HFL’s father.
 

 On December 8, 1997, Laws filed a petition to establish paternity and for child support against Hale.
 
 [1]
 
 The petition alleged that Hale had signed documentation at St. Francis Hospital acknowledging that he was HFL’s father. The petition further alleged that Hale had paid child support since June of 1997, had paid half of the medical bills related to the birth, and had visited with HFL every other weekend and at other times.
 

 On February 17, 1998, Hale stipulated in court as to paternity and child custody. Joint custody was awarded, with Laws receiving primary custody subject to visita
 
 *1155
 
 tion. The next month, in a minute entry and order, the tidal court set the amount of monthly child support. In July of 1998, Laws filed a rule for past due child support, contempt, increase in child support, and income assignment. After a hearing was held on September 18, 1998, the court rendered judgment on November 12, 1999, on the contempt, past-due child support, and income assignment issues. Also on |2November 12, 1999, the trial court rendered a separate judgment in accordance with the earlier stipulations about paternity and custody and the minute order regarding the amount of support.
 

 On November 8, 1999, Hale filed a rule for modification of the joint custody plan and child support, and to change HFL’s name. He prayed that the court enter judgment changing HFL’s surname to Hale. After a hearing on May 1, 2000, the trial court rendered judgment on Hale’s rules for modification of custody and child support. The rule for name change was not addressed.
 

 On February 8, 2007, Hale filed a rule to modify custody, to reduce child support, and for name change. Hale prayed that he be allowed to file the necessary paperwork with the District Attorney’s Office to have HFL’s surname changed to Hale.
 

 In a report rendered on April 18, 2007, a hearing officer recommended, among other things, that Hale be authorized to institute proceedings necessary to change HFL’s surname to Hale. When submitting her written objections to the hearing officer’s recommendations on April 23, 2007, Laws did not mention the recommendation regarding the name change. Laws concluded her written objections by writing that except as objected to therein, she agreed with the recommendations of the hearing officer.
 

 On April 30, 2007, under a new docket number, Hale filed a petition for name change against Laws and the District Attorney for the Fourth |sJudicial District. On November 28, 2007, the trial judges assigned to the cases consolidated them.
 

 On September 8, 2008, the trial court ruled that Hale “shall have authority to take additional necessary legal steps” to change HFL’s surname to Hale. Laws moved for an appeal of this ruling, and the trial court signed the order granting an appeal on October 3, 2008.
 

 DISCUSSION
 

 Laws argues that the trial court erred in granting Hale the authority to change HFL’s surname. Our reading of that document convinces us that the ruling appealed from did not in fact do that; rather, it simply granted Hale the
 
 authority
 
 to seek this relief.
 

 These consolidated records are confusing.
 
 [2]
 

 La. R.S. 40:34(B)(l)(a)(iv) provides guidelines for the surname of a child when the child is born outside of marriage. Pri- or to amendment in 1999, this subsection read, with emphasis added:
 

 If the child is an illegitimate child as provided in Civil Code Article 180, the surname of the child shall be the moth
 
 *1156
 
 er’s maiden name, if the natural father is unknown.
 
 Otherwise, if the mother agrees, the surname of the child shall be that of the natural father or, if both the mother and natural father agree, the surname of the child may be a combination of the surname of the natural father and the maiden name of the mother.
 
 For purposes of this item, “natural father” means a father whose child has been legitimated by subsequent marriage of the parents or by notarial act, or a father who has |4formalIy acknowledged his illegitimate child or who has been judicially declared the father in a filiation or paternity proceeding.
 

 La. R.S. 40:34(B)(l)(a)(iv) was amended in 1999 to read, with emphasis added:
 

 If the child is an illegitimate child as provided in Civil Code Article 180, the surname of the child shall be the mother’s maiden name, if the natural father is unknown.
 
 If the natural father is known, has acknowledged the child, and has agreed to a plan of support, the surname of the child shall be that of the natural father unless the mother and the natural father agree otherwise. If the natural father is known, but has not acknowledged the child, or has not agreed to a plan of support, if the mother agrees, the surname of the child shall be that of the natural father. If both the mother and the natural father agree, the surname of the child may be a combination of the surname of the natural father and the maiden name of the mother.
 
 For purposes of this Item, “natural father” means a father whose child has been legitimated by subsequent marriage of the parents or by notarial act, or a father who has formally acknowledged his illegitimate child or who has been judicially declared the father in a filiation or paternity proceeding.
 

 The subsection was subsequently rewritten in 2003 and amended in 2004. It currently reads:
 

 If the child is born outside of marriage, the surname of the child shall be the mother’s maiden name. If the father is known and if both the mother and the father agree, the surname of the child may be that of the father or a combination of the surname of the father and the maiden name of the mother. For purposes of this Item, “father” means a father who has acknowledged his child or who has been judicially declared the father in a filiation or paternity proceeding.
 

 In
 
 Fontenot v. Noble,
 
 2000-0618 (La.App. 1st Cir.5/11/01), 786 So.2d 335,
 
 writ denied,
 
 2001-2041 (La.10/26/01), 799 So.2d 1155, the First Circuit held that because the 1999 amendment to La. R.S. 40:34(B)(l)(a)(iv) ^conferred rights on the parents with respect to naming children, the amendment was substantive and was to be applied prospectively only.
 

 In determining which version of La. R.S. 40:34(B)(l)(a)(iv) to apply, the critical date is not the date of birth, but the date the birth certificate was filed.
 
 Fontenot, supra.
 
 The birth certificate attached to the mother’s petition to establish paternity and for child support reflects a file date of March 6, 1997, and an issue date of April 14,1997.
 

 Therefore, at the time the birth certificate was filed, even though Laws knew the identity of HFL’s father, his surname could not have appeared on the birth certificate as HFL’s surname unless Laws agreed.
 
 See Morace v. Waller,
 
 1999-1191 (La.App. 3d Cir.12/8/99), 755 So.2d 905.
 

 La. R.S. 40:34(B)(l)(a)(v) states that any change in the surname of a child from that required herein or to that allowed herein shall be by court order as provided for in
 
 *1157
 
 La. R.S. 13:4751 through 4755 or as otherwise provided in this Chapter or by rules promulgated thereunder.
 

 La. R.S. 13:4751 provides, in relevant part:
 

 C. If the person desiring such change is a minor or if the parents or parent or the tutor of the minor desire to change the name of the minor:
 

 (1) The petition shall be signed by the father and mother of the minor or by the survivor in case one of them be dead.
 

 [[Image here]]
 

 (4) The petition may be signed by either the mother or the father acting alone if a child has been given a surname which is different from that authorized in R.S. 40:34(B)(l)(a).
 

 HFL was not given a surname different from that authorized by La. R.S. 40:34(B)(l)(a). Therefore, any petition requesting a name change forj^the minor HFL is required to be signed by both Laws and Hale under La. R.S. 13:4751(0(1).
 

 We note that Laws, who married in 2003 and apparently goes by her husband’s last name, Holyfield, failed to object to the hearing officer’s recommendations regarding the name change. We consider this to mean she has consented to this action.
 

 Furthermore, we note that in her answer to the petition for name change in the second suit, Laws responded that she was not categorically opposed to the name change, but did not think it should occur unless recommended by HFL’s mental health counselor, and that if the surname was changed, it should be changed to Laws-Hale.
 

 Finally, we recognize that we are not reviewing a judgment ordering the name change; rather, we are reviewing only the ruling granting Hale the authority to take the additional necessary legal steps to change HFL’s surname.
 

 Accordingly, we find no error in the trial court’s granting to Hale the “authority to take additional necessary legal steps to change the last name of his minor son.”
 

 CONCLUSION
 

 With Laws to bear the costs of this appeal, the September 2008 ruling in this matter is AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before BROWN, STEWART, GASKINS, CARAWAY and DREW, JJ.
 

 | Rehearing denied.
 

 [1]
 

 . This suit was assigned number 97-4940.
 

 [2]
 

 . Hale contends in his brief that the trial court signed a judgment on February 6, 2009, decreeing that Hale was authorized to change HFL's surname to Hale and ordering the Department of Vital Statistics for the State of Louisiana to amend HFL's birth certificate to reflect this change. This judgment is not in the appellate record, and an appeal was not taken from this judgment, raising two questions: (1) Did the trial court have jurisdiction to render a judgment on February 6, 2009, when jurisdiction in both consolidated records presumably had already divested?; and (2) If that judgment exists, and is in effect, what are we doing examining the "Ruling” from September of 2008?